# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
# GREENSBORO DIVISION



FILED JUL 31 2023

| | |
|---|---|
| JAMES L. BRYANT JR.,<br>SHARON R. BRYANT<br>   Plaintiffs<br>v.<br>EASTWOOD CONSTRUCTION, LLC<br>D/B/A EASTWOOD HOMES, LLC<br>   Defendant | 1:23CV637<br>**COMPLAINT**<br>**(Jury Trial Requested)** |

## INTRODUCTION

1. This is a civil action seeking $10,000,000 (ten million dollars) from Defendant Eastwood Homes (Eastwood), arising from their discriminatory and retaliatory housing practices in violation of the Federal Fair Housing Act (FHA) 42 U.S.C. § 3601 *et. seq.*, the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 & 1982, *et. seq.*, and violations of state laws including claims under the North Carolina State Fair Housing Act N.C.G.S. § 41A-1 *et seq.*, and the North Carolina Unfair Deceptive Trade Practices Act, N.C.G.S. § 75-1.1 *et seq*.

2. Defendant Eastwood sought to silence and punish their customers, Plaintiffs James L. Bryant Jr., and Sharon R. Bryant (collectively, Bryants), from filing complaints about housing discrimination, reasonable accommodations, and environmental hazards by suing and obtaining restraining orders against them and refusing to honor their home maintenance and/or warranty requests.

## JURISDICTION & VENUE

3. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 3613, and 42 U.S.C. § 1981 & 1982, as the action arises out of the Federal Fair Housing Act and the Civil Rights Act of 1866. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Bryants' state law claims because those claims are related to Bryants' federal law claims and arise out of a common nucleus of related facts, forming part of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1)(2) because Bryants are residents of this district, Eastwood conducts business in this district, and the violations occurred in this district.

## PARTIES

5. Plaintiff Bryants, was at all relevant times, are citizens of and reside in Randolph County North Carolina. The Bryants' race is African American and therefore they are of a protected class. Bryants are an "aggrieved person" pursuant to 42 U.S.C. 3602 (i). Defendant Eastwood Homes is a limited corporation organized and existing under the laws of North Carolina and is a "person" pursuant to 42 U.S.C. 3602 (d). None of the parties are infants nor incompetent.

6. Eastwood offers "dwellings" and "housing accommodations" for sale within the meaning of the federal Fair Housing Act, 42 U.S.C. § 3602 and the North Carolina State Fair Housing Act, N.C. Gen. Stat. § 41A-3.
7. At all relevant times, Eastwood, in the ordinary course of their respective business, as a seller of residential property, engaged in acts or practices affecting commerce within the meaning of N.C. Gen. Stat. § 75-1.1.

## FACTS & ALLEGATIONS

8. Bryants hereby incorporates the following facts and allegations by reference herein.
9. Bryants, an African American couple, met Eastwood's customer service representative, Deborah Frazier, at Eastwood's model home in Trinity, NC., on or around June 20th, 2022, to inquire about purchasing a new home.
10. Eastwood, in an attempt to persuade minority buyers such as Bryants, feel more comfortable in purchasing homes in a predominantly white community, made unlawful statements regarding Bryants' current and future neighbors such as, "your next-door neighbor Mr. Cox is the new city manager, he's black", "your new neighbor across the street, Mr. Jackson, is a motivational speaker from New York, he's black", " your other neighbors next to Mr. Jackson, the Hunts, are a good Christian family, they are black", and "a few doors down from you is Tony, a real estate agent for D.R. Horton, and he is black too".
11. Eastwood, also attempted to deceive minority buyers such as Bryants, into purchasing homes by misrepresenting the subdivision would have decorative streetlights, sidewalks, curbs, and gutters installed between the beginning of Thanksgiving 2022 or no later than Christmas 2022.
12. Upon belief of Eastwood's unlawful disclosure of having other Black customers in the subdivision and their misrepresentation of decorative streetlights, sidewalks, curbs, and gutters, Bryants felt comfortable enough to sign a contract to purchase a new home from Eastwood Homes on 06/24/2022 and officially purchased the home on 07/29/2022.
13. During the signing to purchase on 6/24/2022 and closing of the purchase contract on 07/29/2022, neither Eastwood, the closing attorney, nor real estate agent advised, disclosed, or made Bryants aware of a non-disparaging clause within the contract prohibiting Bryants from posting negative reviews about Eastwood on social media. The non-disparaging clause was hidden, not properly labeled as such, and not negotiated with Bryants.
14. Over the next six months, Bryants periodically spoke with neighbors about the lack of decorative streetlights, sidewalks, curbs, gutters and other issues with the homes and the subdivision such as flooding and land erosion.
15. Bryants met neighbor Katherine Jones, who installed her own streetlight because her daughter, Brittany, has a disability. Jones told Bryants on 2/4/2023 that Eastwood's agent, Trent Adams, wrote her a letter demanding she remove the streetlight, or they would remove it. Jones told Bryants how unfair she thought the letter was and she was being "picked on" and discriminated against by Eastwood's agent, Trent Adams.
16. Bryants told Jones they would present her complaint about the letter threatening removal of her self-installed streetlight, as well as other neighborhood complaints, to Eastwood's customer service representative, Deborah Frazier, later during the week of February 4, 2023.
17. On 2/07/2023, Bryants and neighbor, Jerolin Jackson, visited with Eastwood's customer service rep, Deborah Frazier, to request a meeting with management to discuss neighbors' complaints

and concerns about housing and subdivision issues. Frazier asked Bryants what the complaints were so she could relay them to Eastwood's management.
18. Bryants presented Eastwood with neighbor Jones' disability complaint concerning her self-installed streetlight. Bryants also asked Eastwood about their promise of decorative streetlights, sidewalks, curbs, and gutters. Additionally, Bryants told Eastwood neighbors wanted them to help form a Homeowners Association (HOA) to voice complaints and concerns to Eastwood about housing and subdivision issues.
19. Eastwood, at all times relevant, never disclosed or explained to Bryants and/or neighbors the land developer (Trent Adams Properties) was separate from the homebuilder (Eastwood). Nor did Eastwood ever disclose to Bryants who was responsible for housing and subdivision issues and to which party should Bryants and neighbors voice concerns and file complaints.
20. On 2/09/2023, Eastwood's general counsel, Allen Nason, out of retaliation of Bryants complaints to Eastwood, emailed Bryants a cease-and-desist letter accusing Bryants of confronting, threatening, and making Eastwood's employees feel uncomfortable.
21. In the letter, Nason told Bryants they are prohibited from entering onto any Eastwood property or communicating with any Eastwood employee, absent his written approval. Nason further stated this blanket prohibition includes entering any Eastwood property for any sales or any other event. Nason concluded the letter with, "failure to abide by this notice will result in a protective or other court order being sworn out against you."
22. On or about March 1st, 2023, the North Carolina Real Estate Commission contacted Eastwood concerning a discrimination complaint filed by the Bryants.
23. On or about April 1st, 2023, Bryants began having homeowners' association (HOA) meetings to discuss and present issues concerning deplorable housing and neighborhood conditions to Eastwood.
24. Shortly after the Bryants began having the HOA meetings, Eastwood and their agent, Trent Adams, began a smear campaign to criticize the Bryants' efforts by sending defamatory and harassing emails about the Bryants to the neighbors.
25. On or about April 20th, Bryants and neighbors Jerolin Jackson and Cynthia Issacs erected yard signs and made posts on social media voicing concerns about deplorable housing and neighborhood conditions. The signs and social media posts were all made and erected at the same time.
26. On or about April 24th, Bryants made a complaint against Eastwood with the North Carolina Department of Environmental Quality concerning land erosion, storm water drainage, and sedimentation.
27. On or about April 27th, 2023, Eastwood filed a lawsuit and temporary restraining order against the Bryants, out of retaliation for filing complaints with the North Carolina Real Estate Commission, the North Carolina Department of Environmental Quality, and Eastwood (a housing provider) concerning reasonable accommodations.
28. There was a causal connection between Bryants protected activities and Eastwood's adverse actions. There was a temporal proximity of 2 days after the initial reasonable accommodation complaint was made before Bryants received the cease-and desist letters and 3 days after the subsequent environmental hazard complaint was made before the lawsuit was filed and temporary restraining order was issued against Bryants.

29. Eastwood alleges the lawsuit and restraining order was based on a breach of the non-disparaging clause prohibiting customers from making negative comments on social media and erecting yard signs casting Eastwood in a negative light.
30. However, Eastwood has similarly situated white customers who have erected signs in their yard who have not been sued and/or restrained and similarly situated white customers who have breached their non-disparaging clause making negative comments on social media websites such as Facebook, Yelp, Angi's List, and Google, who have not been sued and/or restrained.
31. Eastwood is aware and has knowledge of those alleged breaches of their non-disparaging clause and has not exercised discretion to sue or restrain those white customers or black customers who didn't file complaints.
32. Warranty requests are a part of Eastwood's new home purchase contract. Prior to Bryants making complaints, Eastwood honored and/or repaired Bryants maintenance and/or warranty claims. After making complaints, Eastwood was aware of, but failed to acknowledge, honor, or repair Bryants maintenance and/or warranty requests.
33. Eastwood's cease and desist letters, lawsuit, restraining orders, and refusal to honor Bryants warranty requests were issued out of discrimination and/or retaliation, because Bryants helped a disabled neighbor become aware of her Americans with Disabilities (ADA) rights and for helping assist her with filing an ADA housing complaint with Eastwood.
34. Eastwood's cease and desist letters, lawsuit, restraining orders, and refusal to honor Bryants warranty requests were issued out of discrimination and/or retaliation, because Bryants attempted to form/participate/lead a Homeowner's Association (HOA) to make homeowners aware of their rights within the subdivision.
35. Eastwood's cease and desist letters, lawsuit, restraining orders, and refusal to honor Bryants warranty requests were issued out of discrimination and/or retaliation, because similarly situated white neighbors who made complaints to Eastwood, did not receive cease-and-desist letters, a lawsuit, restraining orders, and refusal to honor their warranty requests.
36. Eastwood's cease and desist letters, lawsuit, restraining orders, and refusal to honor Bryants warranty requests were issued out of discrimination and/or retaliation, because they denied and interfered with Bryants' rights in the terms and conditions of the purchase contract to have the same access to Eastwood's facilities and services to which similarly situated white neighbors have full access to enjoy, without the fear of harassment, intimidation, interference, and retaliation.
37. But for Bryants protected African American racial status, Eastwood would not have discriminated and retaliated against Bryants in the terms and conditions of the purchase contract and interfered with Bryants right to have full access of enjoyment to Eastwood's facilities and services as their white counterparts.
38. As a result of Eastwood's unlawful conduct, Bryants suffered emotional distress, including humiliation, embarrassment, mental anguish, violation of their civil rights, and loss of dignity. Bryants also suffered an invasion of their private right of occupancy, depriving them of their use and enjoyment of their home, and invasion of privacy.
39. Bryants also suffered out-of-pocket damages resulting from the unlawful conduct. Accordingly, Bryants are entitled to compensatory and/or punitive damages under the FHA, Civil Rights Act of 1866, as amended, and under the state causes of actions alleged in this Complaint. Bryants are

also entitled to treble damages for violations of the state law concerning unfair or deceptive trade practices.

## FIRST CLAIM FOR RELIEF
### 42 U.S.C § 3617 - Fair Housing Act (FHA) Retaliation, Intimidation, Interference, & Unlawful Threats

40. Plaintiffs re-allege and incorporate by reference each paragraph previously alleged in this Complaint.
41. Bryants engaged in activity protected by the FHA, including, but not limited to, (a) making and reporting complaints about housing discrimination and environmental hazards to state governmental regulatory agencies and (b) making and reporting complaints about reasonable accommodations under the Americans with Disabilities (ADA) Act to a housing provider.
42. The Bryants were acting under a reasonable, good-faith belief that all complaints were legitimate and with merit.
43. Eastwood was aware of Bryants' protected activities and subjected Bryants to adverse actions in the form of unlawful threats, interference, intimidation, and retaliation. Eastwoods's unlawful conduct against Bryants included, but was not limited to, cease-and-desist letters, filing a lawsuit, filing restraining orders, filing contempt orders, and refusing to honor Bryants' maintenance and/or warranty requests.
44. Eastwood's conduct was so severe or pervasive a reasonable person in Bryants' position would have found Eastwood's actions materially adverse, which in turn would have dissuaded a reasonable person from making or supporting a complaint of discrimination, retaliation, reasonable accommodations, or environmental hazards.
45. There was a causal connection in the temporal proximity between Bryant's protected activities and Eastwood's adverse actions.
46. Bryants suffered injury when Eastwood committed these discriminatory and/or retaliatory acts, either directly or indirectly through their agents, in violation of the Fair Housing Act.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C § 3604(b) Hostile Housing Environment

47. Plaintiffs re-allege and incorporate by reference each paragraph previously alleged in this Complaint.
48. Bryants were subjected to harassment, intimidation, and unlawful threats of a discriminatory and retaliatory nature by Eastwood.
49. Eastwood's above-described conduct was not welcomed and not wanted.
50. Eastwood's conduct was motivated and determined by the fact that Bryants participated in the protected activities of filing discrimination, reasonable accommodation, and environmental hazard complaints.
51. Eastwood's conduct was also motivated and determined by the fact the Bryants' race was African American.
52. Eastwood's conduct was so severe or pervasive it altered the use and enjoyment of the home so much that a reasonable person in Bryants' position would find Bryants' housing environment to be hostile and/or abusive based on Bryants race and participation in protected activities.
53. Eastwood knew or should have known of the discrimination and/or retaliation, but took no meaningful action to correct the situation, thereby tolerating and/or facilitating the unlawful conduct.

54. As a result of Eastwood's actions or lack thereof, Bryants were subjected to different terms and conditions based on their protected racial class and participation in the protected activities of filing discrimination, reasonable accommodation, and environmental hazard complaints.
55. Bryants suffered injury when Eastwood committed these discriminatory and/or retaliatory acts, either directly or indirectly through their agents, in violation of the Fair Housing Act.

### THIRD CLAIM FOR RELIEF
### 42 U.S.C § 3604 (C) Discriminatory Statements

56. Plaintiffs re-allege and incorporate by reference each paragraph previously alleged in this Complaint.
57. Eastwood made statements within the selling of a dwelling indicating preference, limitation, and discrimination based on race, color, religion, and familial status. Eastwood's unlawful statements included, but was not limited to, telling Bryants they had and/or would have other neighbors who were either "Black/African", "Good Christians", and "kids with good manners".
58. Bryants suffered injury when Eastwood committed these discriminatory and/or retaliatory acts, either directly or indirectly through their agents, in violation of the Fair Housing Act.

### FOURTH CLAIM FOR RELIEF
### 42 U.S.C § 1981 *et. seq.* Racial Discrimination

59. Plaintiffs re-allege and incorporate by reference each paragraph previously alleged in this Complaint.
60. Bryants race is African American which makes them a member of a protected class.
61. Eastwood discriminated against Bryants in the making and enforcement of housing contracts by subjecting Bryants to unequal treatment and different terms and conditions of service than their similarly situated white customers.
62. Eastwood's unlawful conduct against Bryants included, but was not limited to, suing Bryants to enforce a non-disparaging contract clause regarding posting negative comments about Eastwood on social media while not suing similarly situated white customers who posted negative comments about Eastwood on social media. Eastwood's unlawful conduct also included obtaining restraining orders against Bryants for erecting signs in their yard while not obtaining restraining orders on similarly situated white customers who erected signs in their yards.
63. Eastwood knew or should have known that the racial discrimination and/or retaliation was intentional.
64. But for Bryants protected African American racial status, Eastwood would not have discriminated and retaliated against Bryants in the terms and conditions of the purchase contract nor the full access of enjoyment to Eastwood's facilities and services.
65. Bryants suffered injury when Eastwood committed these discriminatory and/or retaliatory acts, either directly or indirectly through their agents, in violation of the Civil Rights Act of 1866, as amended.

### FIFTH CLAIM FOR RELIEF
### 42 U.S.C § 1981 *et. seq.* Retaliation

43 Plaintiffs re-allege and incorporate by reference each paragraph previously alleged in this Complaint.
44 Bryants engaged in activity protected by section 1981 of the Civil Rights Act of 1866, as amended, including, but not limited to, (a) making and reporting complaints about housing

discrimination and environmental hazards to state governmental regulatory agencies and (b) making and reporting complaints about reasonable accommodations under the Americans with Disabilities (ADA) Act to a housing provider.
45. The Bryants were acting under a reasonable, good-faith belief that the complaints were legal and legitimate.
46. Eastwood was aware of Bryants' protected activities and subjected Bryants to adverse actions in the form of unlawful threats, interference, intimidation, and retaliation. Eastwoods's unlawful conduct against Bryants included, but was not limited to, cease-and-desist letters, filing a lawsuit, filing restraining orders, filing contempt orders, and refusing to honor Bryants' maintenance and/or warranty requests.
47. Eastwood's conduct was so severe or pervasive a reasonable person in Bryants' position would have found Eastwood's actions materially adverse, which in turn would have dissuaded a reasonable person from making or supporting a complaint of discrimination, retaliation, reasonable accommodations, or environmental hazards.
48. There was a causal connection in the temporal proximity between Bryant's protected activities and Eastwood's adverse actions.
49. But for Bryants protected African American racial status, Eastwood would not have discriminated and retaliated against Bryants in the terms and conditions of the purchase contract nor the full access of enjoyment to Eastwood's facilities and services.
50. Bryants suffered injury when Eastwood committed these discriminatory and/or retaliatory acts, either directly or indirectly through their agents, in violation of the Civil Rights Act of 1866, as amended.

## SIXTH CLAIM FOR RELIEF
### 42 U.S.C. § 1982 et. seq. Racial Discrimination

51. Plaintiffs re-allege and incorporate by reference each paragraph previously alleged in this Complaint.
52. The Bryant's race is African American which makes them a member of a protected class.
53. The Bryants engaged and entered a contract with Eastwood to purchase a new home.
54. Eastwood discriminated against Bryants in the making and enforcement of a housing contract by subjecting Bryants to unequal treatment and different terms and conditions of service than their similarly situated white customers.
55. Eastwood's unlawful conduct against Bryants included, but was not limited to, suing Bryants to enforce a non-disparaging contract clause regarding posting negative comments about Eastwood on social media while not suing similarly situated white customers who posted negative comments about Eastwood on social media. Eastwood's unlawful conduct also included obtaining restraining orders against Bryants for erecting signs in their yard while not obtaining restraining orders on similarly situated white customers who erected signs in their yards.
56. Eastwood knew or should have known that the racial discrimination and/or retaliation was intentional.
57. But for Bryants protected African American racial status, Eastwood would not have discriminated and retaliated against Bryants in the terms and conditions of the purchase contract nor the full access of enjoyment to Eastwood's facilities and services.

58. Bryants suffered injury when Eastwood committed these acts, either directly or through their agents, these discriminatory acts in violation of the Civil Rights Act of 1866, as amended.

## SEVENTH CLAIM FOR RELIEF
## N.C. Gen. Stat. § 75-1.1 et seq. - Unfair and Deceptive Trade Practices

59. Plaintiffs re-allege and incorporate by reference each paragraph previously alleged in this Complaint.
60. Eastwood Homes has engaged in unfair and deceptive practices and acts as alleged above, including, *inter alia:*
    a) Offering Bryants a review - limiting, standardized form contract that prohibits or restricts the ability of a person who is the party to a contract to engage in a written, oral, or pictorial review, assessment, or analysis of goods, services, or conduct related to the goods and services.
    b) Requiring Bryants accept a review – limiting, standardized form contract as a condition of Eastwood's fulfillment of any of its obligations under Bryants contract.
    c) Enforcing the validity of the review – limiting, standardized form contract by suing Bryants and obtaining a restraining order.
    d) Imposing a penalty or fee against Bryants who are party to the contract for engaging in a written, oral, or pictorial review, assessment, or analysis of goods, services, or conduct related to the goods and services.
61. The unfair and deceptive practices and acts are in and affecting commerce because Eastwood Homes is in the business of selling residential homes to the consuming public, entered contract, and sold a home to the Bryants.
62. Eastwood's unfair and deceptive practices and acts are unconscionable, substantially injurious, and constitute an inequitable assertion of power and position against Bryants. Eastwood's unfair and deceptive practices and acts offend the established public policy of North Carolina and the Federal Consumer Review Fairness Act of 2016. A violation of the CRFA is considered a violation of unfair deceptive practices trade act which is actionable under North Carolina state law.
63. Eastwood has caused Bryants irreparable harm, directly or through an employee or agent, by committing these unfair, unethical, deceptive, and illegal practices in violation of N.C. Gen. Stat. § 75-1.1.
64. Bryants are entitled, pursuant to N.C. Gen. Stat. § 75-16, to treble the amount of their actual or compensatory damages.
65. Bryants are also entitled to reasonable attorney fees pursuant to N.C. Gen. Stat. §75-16.1.

## EIGHTH CLAIM FOR RELIEF
## N.C. Gen. Stat. § 41A-3 et seq. – Fair Housing Act (Retaliation, Interference, Intimidation)

65. Plaintiffs re-allege and incorporate by reference each paragraph previously alleged in this complaint.
66. Bryants engaged in activity protected by the FHA, including, but not limited to, (a) making and reporting complaints about housing discrimination and environmental hazards to state governmental regulatory agencies and (b) making and reporting complaints about reasonable accommodations under the Americans with Disabilities (ADA) Act to a housing provider.
67. The Bryants were acting under a reasonable, good-faith belief that all complaints were legitimate and with merit.
68. Eastwood was aware of Bryants' protected activities and subjected Bryants to adverse actions in the form of unlawful threats, interference, intimidation, and retaliation.

Eastwoods's unlawful conduct against Bryants included, but was not limited to, cease-and-desist letters, filing a lawsuit, filing restraining orders, filing contempt orders, and refusing to honor Bryants' maintenance and/or warranty requests.

69. Eastwood's conduct was so severe or pervasive a reasonable person in Bryants' position would have found Eastwood's actions materially adverse, which in turn would have dissuaded a reasonable person from making or supporting a charge of discrimination, retaliation, reasonable accommodations, or environmental hazards.
70. There was a causal connection in the temporal proximity between Bryant's protected activities and Eastwood's adverse actions.
71. But for Bryants protected African American racial status, Eastwood would not have discriminated and retaliated against Bryants in the terms and conditions of the purchase contract nor the full access of enjoyment to Eastwood's facilities and services.
72. Bryants suffered injury when Eastwood committed these discriminatory and/or retaliatory acts, either directly or indirectly through their agents, in violation of the Fair Housing Act.

## JURY TRIAL REQUESTED

73. Bryants request a trial by jury on all issues so triable.

## PRAYER FOR PUNITIVE DAMAGES

74. As to Bryants' claims under federal law, Eastwood is liable for punitive damages and at least one of the following factors was present and related to the conduct for which they are liable: malice, an evil motive, and/or callous indifference to a federally protected right.
75. As to Bryants' claims under state law, Eastwood is liable for punitive damages and at least one of the following factors was present and related to the conduct for which they are liable: Fraud, Malice, and/or Willful or Wanton Conduct.

**WHEREFORE, the Bryants pray that the Court will grant the following relief:**

76. Find for the Plaintiffs and against the Defendants on each claim for relief alleged herein.
77. Award compensatory damages under each claim for relief alleged herein and treble the amount of Bryants' actual damages.
78. Award punitive damages in the total amount of Ten Million Dollars ($10,000,000) for all claims for relief pursuant to the Fair Housing Act, Civil Rights Act of 1866, as amended, the North Carolina State Fair Housing Act N.C.G.S. § 41A-1 *et seq.*, and the North Carolina Unfair Deceptive Trade Practices Act, N.C.G.S. § 75-1.1 *et seq.*
79. Issue declaratory relief stating that Eastwood has violated the laws associated with the claims for relief raised herein.
80. Permanently enjoin all unlawful practices alleged in this Complaint and impose affirmative injunctive relief requiring Defendant Eastwood, their contractors, agents, employees, assignees, and any person acting in concert or participating with them to take affirmative action to provide equal housing opportunities to all buyers and prospective buyers free from conduct in violation of the Fair Housing Act, Civil Rights Act of 1866, as amended, the North Carolina State Fair Housing Act N.C.G.S. § 41A-1 *et seq.*, and the North Carolina Unfair Deceptive Trade Practices Act, N.C.G.S. § 75-1.1 *et seq.*

81. Tax the costs of this action against Defendant Eastwood and award Bryants with reasonable attorney's fees and court costs pursuant to the FHA, Civil Rights Act of 1866, as amended and/or N.C. Gen. Stat. § 75.- 1.1 et seq.; and
82. Grant all such other and further relief as the Court deems just and proper.

Respectfully submitted on this day, July 31st, 2023.

*James L. Bryant, Jr.*
James L. Bryant, Jr.
Attorney Pro Se
5629 Siler St
Trinity, North Carolina 27370
Tel: (478) 256-8625
Jlbryantjr11@gmail.com

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Complaint and Jury Request was served upon Defendants by placing the same in the United States mail, postage prepaid, and addressed as follows:

Eastwood Homes
2857 Westport Rd.
Charlotte, NC. 28208

This is the 31st, day of July 2023.

*James L. Bryant, Jr.*
James L. Bryant, Jr.
Attorney Pro Se
5629 Siler St
Trinity, North Carolina 27370
Tel: (478) 256-8625
Jlbryantjr11@gmail.com
