IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
JAMES L. BRYANT, JR. and        )
SHARON R. BRYANT,               )
                                )
            Plaintiffs,         )
                                )
      v.                        )       1:23cv637
                                )
EASTWOOD CONSTRUCTION, LLC,     )
d/b/a EASTWOOD HOMES,           )
                                )
            Defendant.          )
```

### MEMORANDUM OPINION AND ORDER

This case comes before the Court on the "Motion to Dismiss [the] Complaint" (Docket Entry 15) (the "Initial Motion"),[1] the "Amended Rule 26(f) Report" (Docket Entry 28) (the "Rule 26(f) Report"), and the "Motion to Dismiss and Motion to Enforce Settlement Agreement" (Docket Entry 30) (the "Enforcement Motion"). For the reasons that follow, the Court will grant the Enforcement Motion and will deny/terminate as moot the Initial Motion and Rule 26(f) Report.[2]

---

[1] For legibility reasons, this Opinion omits all-cap and bold font in quotations from the parties' materials. In addition, to avoid confusion, this Opinion omits the words "Defendant(s)" and "Plaintiff(s)" before the parties' names in all quotations.

[2] Pursuant to the parties' consent, Chief United States District Judge Catherine C. Eagles referred this case to the undersigned United States Magistrate Judge for all proceedings. (See Docket Entry 24 at 1.) [Docket Entry page citations utilize the CM/ECF footer's pagination.]

## BACKGROUND

On April 27, 2023, Eastwood Construction, LLC, d/b/a Eastwood Homes ("Eastwood") filed a verified complaint in North Carolina state court against James R. Bryant and Sharon R. Bryant (collectively, the "Bryants"), alleging claims for tortious interference with contract, interference with prospective economic advantage, libel, breach of contract, and unfair and deceptive acts and practices. (See Docket Entry 16-7.) That same day, Eastwood obtained a temporary restraining order against the Bryants. (See Docket Entry 16-8.) On May 19, 2023, the Bryants filed an answer and counterclaims in state court (see Docket Entry 16-9), which they amended on July 10, 2023 (see Docket Entry 16-15). On June 27, 2023, the state court entered a Preliminary Injunction Order against the Bryants (see Docket Entry 16-11), which they appealed the following day (see Docket Entry 16-13). Thereafter, the state court entered Indirect Criminal Contempt Orders against the Bryants (see Docket Entry 16-17), which they promptly appealed (see Docket Entry 16-18).

Meanwhile, on July 31, 2023, the Bryants initiated the instant federal lawsuit. (See Docket Entry 2 (the "Complaint") at 1.) Per the Complaint:

> This is a civil action seeking $10,000,000 (ten million dollars) from [Eastwood], arising from their [sic] discriminatory and retaliatory housing practices in violation of the Federal Fair Housing Act (FHA)[,] 42 U.S.C. § 3601 *et[] seq.*, the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 & 1982, *et[] seq.*, and

2

> violations of state laws including claims under the North
> Carolina State Fair Housing Act[,] N.C.G.S. § 41A-1 *et
> seq.*, and the North Carolina Unfair Deceptive Trade
> Practices Act, N.C.G.S. § 75-1.1 *et seq.*
>
> Eastwood sought to silence and punish their [sic]
> customers, [the Bryants], from filing complaints about
> housing discrimination, reasonable accommodations, and
> environmental hazards by suing and obtaining restraining
> orders against them and refusing to honor their home
> maintenance and/or warranty requests.

(Docket Entry 2, ¶¶ 1-2 (internal paragraph numbering omitted).)

In response, Eastwood filed the Initial Motion, seeking to dismiss the Complaint on the grounds that, inter alia, "this federal lawsuit is an attempt to relitigate issues that have already been decided in an underlying state proceeding between Eastwood and [the Bryants]." (Docket Entry 15 at 1.) After obtaining an extension of time to respond to the Initial Motion (see Text Order dated Oct. 6, 2023), the Bryants purported to file an Amended Complaint (see Docket Entry 22), which they maintained "render[ed the Initial Motion] moot" (Docket Entry 21 at 1).[3] According to the Amended Complaint:

> This is a civil action seeking $25,000,000
> (twenty-five million dollars) from [Eastwood], arising
> from their [sic] discriminatory and retaliatory housing
> practices in violation of the Federal Fair Housing Act

---

[3] The Bryants failed to file the proposed Amendment Complaint within twenty-one days of the Initial Motion's filing. (Compare Docket Entry 15 at 4, with Docket Entry 22 at 10.) As such, they require "[Eastwood's] written consent or the [C]ourt's leave," Fed. R. Civ. P. 15(a)(2), to file the Amended Complaint. See Fed. R. Civ. P. 15(a)(1). For the reasons discussed herein, however, the Amended Complaint's status does not affect the outcome of this lawsuit.

> (FHA)[,] 42 U.S.C. § 3601 *et[] seq.*, the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 & 1982, *et[] seq.*, and violations of state laws including claims under the North Carolina State Fair Housing Act[,] N.C.G.S. § 41A-1 *et seq.*, and the North Carolina Unfair Deceptive Trade Practices Act, N.C.G.S. § 75-1.1 *et seq.*
>
> Eastwood sought to silence and punish their [sic] customers, [the Bryants], because of them filing complaints about housing discrimination, reasonable accommodations, and environmental hazards by suing them and refusing to honor their home maintenance and/or warranty requests.

(Docket Entry 22, ¶¶ 1-2 (internal paragraph numbering omitted).)

On January 11, 2024 (see Docket Entry 26 at 2), Eastwood

> notif[ied] the Court that Eastwood and [the Bryants] entered into a settlement agreement on December 29, 2023 (the "Settlement Agreement"[ or "Agreement"]) that involves the complete resolution of the instant case as well as a parallel proceeding in the Superior Court of Randolph County, North Carolina. On January 10, 2024, Eastwood moved to enforce the Settlement Agreement against [the Bryants] in Randolph County Superior Court to compel a dismissal of this action.

(Id. at 1.) Nevertheless, on January 16, 2024, the Bryants filed the Rule 26(f) Report, asserting that "[d]iscovery should not be postponed or limited pending determination of a pending dispositive motion," that the parties should have until March 2024 to request leave to join parties or amend their pleadings, and that discovery should continue until May 2024. (Docket Entry 28 at 1-2.)

On March 1, 2024, the Bryants filed a "Notice of Order Granting Summary Judgement in North Carolina Superior Court." (Docket Entry 29 (the "State Ruling Notice") at 1.) According to the State Ruling Notice:

4

> 1. [Eastwood] filed a proposed motion to enforce a settlement agreement in the NC Superior Court case on January 10th, 2024. [Eastwood] then filed notice of that motion with this Court on January 11th, 2024, as a ploy to divert this Court's attention away from ruling on the[ Initial Motion] (See Ex: A).
>
> 2. North Carolina Superior Court issued an order granting [Eastwood] full summary judgement on February 28th, 2024, on all claims, none of which are related to the federal case (See Ex: B). [The Bryants] dismissed their counterclaims on December 29th, 2023 (See Ex: C).
>
> 3. The order granting [Eastwood] full summary judgement and [the Bryants'] voluntary dismissal of all counterclaims effectively ends the state case making [Eastwood]'s motion to dismiss argument based on there being an active state case litigating the same issues moot.
>
> Wherefore, [the Bryants] request that the Court continue its proceedings regarding the pending [Initial Motion] because the order granting [Eastwood] full summary judgement and [the Bryants'] voluntary dismissal of all counterclaims renders [Eastwood]'s Notice of Motion to Enforce Settlement Agreement moot.

(Docket Entry 29 at 1.)

As Exhibit A to the State Ruling Notice, the Bryants attached an email that Eastwood's counsel sent to them at 5:04 p.m. on January 10, 2024, which states (in full): "I was thinking more of a notice of settlement so the Judge would not work on the motion along with mention of the dispute and the pendency of the motion we just filed." (Docket Entry 29-1 at 1.) As Exhibits B and C, the Bryants attached, respectively, a state court order decreeing the entry of summary judgment in favor of Eastwood and against the Bryants (see Docket Entry 29-2) and a state-court filing dated

5

December 29, 2023, wherein the Bryants voluntarily dismissed with prejudice their counterclaims (see Docket Entry 29-3).

On April 1, 2024, Eastwood filed the Enforcement Motion, seeking "an Order dismissing each of [the Bryants'] claims against Eastwood, with prejudice and/or an Order enforcing the [S]ettlement [A]greement entered into by the parties on December 29, 2023, as part of the resolution of this litigation." (Docket Entry 30 at 1 (parenthetical omitted).) As relevant to the Enforcement Motion, the Settlement Agreement states:

> Whereas, Eastwood is in the business of constructing residential homes in a neighborhood called the Cottages at Piper Village ("Piper Village"), in Randolph County, North Carolina.
>
> Whereas, on June 25, 2022, [the Bryants] entered into a contract for the purchase of property in Piper Village called the New Home Purchase Agreement, and [the Bryants] closed on the purchase of the house on July 29, 2022.
>
> Whereas, a dispute arose between Eastwood, on the one hand, and [the Bryants], on the other hand, regarding the [Bryants'] conduct towards Eastwood's business, customers, and employees and the performance of the New Home Purchase Agreement.
>
> Whereas, Eastwood initiated a lawsuit in Randolph County Superior Court entitled Eastwood Construction, LLC d/b/a Eastwood Homes v. James L. Bryant, Jr. and Sharon R. Bryant (the "State Lawsuit"), and brought claims including tortious interference with contract, interference with prospective economic advantage, libel per se, libel per quod, breach of contract, and unfair and deceptive trade practices.
>
> Whereas, [the Bryants] filed various counterclaims against Eastwood including claims for breach of contract, libel per se, libel per quod, negligence, and unfair and deceptive trade practices in the State Lawsuit.

6

Whereas, the Randolph County Superior Cou1t entered a preliminary injunction against [the Bryants] to prevent [the Bryants] from interfering with Eastwood's business in the State Lawsuit on June 27, 2023 (the "Preliminary Injunction Order") in the form attached as Exhibit A.

Whereas, on July 31, 2023, [the Bryants] initiated a lawsuit in federal court in the Middle District of North Carolina entitled <u>James L. Bryant Jr. and Sharon R. Bryant v. Eastwood Construction, LLC d/b/a Eastwood Homes, LLC</u> (the "Federal Lawsuit"), and brought claims including violations of the Fair Housing Act, Civil Rights Act of 1866, North Carolina Unfair and Deceptive Trade Practices Act, and North Carolina State Fair Housing Act.

Whereas, Eastwood denies the allegations of [the Bryants] in the State Lawsuit and Federal Lawsuit, and [the Bryants] deny the allegations of Eastwood in the State Lawsuit.

Whereas, the Parties have agreed to forever resolve and settle all matters in controversy between and among the Parties, without any admission of liability, related to the State Lawsuit and Federal Lawsuit (collectively, the "Lawsuits"), as well as all claims that could have been raised in the Lawsuits.

Now, therefore, in consideration of the mutual covenants and agreements set forth in this Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. <u>Incorporation of Recitals.</u> The Parties certify and agree that the Recitals are true, accurate and complete, in all material respects and are incorporated into the Agreement.

2. <u>Settlement of all Claims Arising Under the Lawsuits and Proceeds Allocation:</u> Upon execution and delivery of this Agreement, and performance of its terms, this Agreement settles all claims arising under the Lawsuits ("All Claims"). All Claims are being settled for payment of an amount of agreed damages (the "Payment Terms") and performance of certain terms (the "Performance Terms"). After due deliberation, based upon consideration of the controlling facts and circumstances

7

and bargained for consideration, the Parties agree to following terms regarding

3. <u>Payment Terms</u>

   a. Upon execution of this Agreement and all exhibits thereto, Eastwood shall pay to [the Bryants], in readily available funds, the sum of Seven Thousand Five Hundred and No/100 Dollars ($7,500).

4. <u>Performance Terms</u>

   a. <u>Compliance with Preliminary Injunction.</u> [The Bryants] shall comply with the terms of the Preliminary Injunction Order in perpetuity as though the Preliminary Injunction Order was still in effect. The Preliminary Injunction is attached hereto as Exhibit A and is incorporated herein by reference.

   b. <u>Confession of Judgment.</u> [The Bryants] shall execute a Confession of Judgment in the form attached as Exhibit B hereto in the principal amount of One Hundred and Fifty Thousand and No/100 Dollars ($150,000). The Confession of Judgment shall be kept confidential and shall not be filed unless and until an event of default occurs ("Default"). For purposes of this subparagraph, Default means failure by [the Bryants to] comply with the Performance Terms in Paragraph 5 [sic]. The Confession of Judgment shall be retained by counsel for Eastwood.

   c. <u>Dismissal of Lawsuits.</u>

      i. Within five (5) business days of the delivery of the Payment, (A) [the Bryants] shall execute and file a Stipulation of Voluntary Dismissal with Prejudice of the State Lawsuit with the Randolph County Clerk of Court, dismissing all of their counterclaims with prejudice, and (B) [the Bryants] shall also execute and file a Stipulation of Voluntary Dismissal with Prejudice of the Federal Lawsuit with the Clerk of the United States District Court for

8

the Middle District of North Carolina, dismissing all of their claims with prejudice.

ii. Upon filing of the Dismissals by [the Bryants], Eastwood shall execute and file a Stipulation of Voluntary Dismissal with Prejudice of the State Lawsuit with the Randolph County Clerk of Superior Court, dismissing all claims without [sic] prejudice.

d. <u>Withdrawal of Other Complaints</u>

i. Upon execution of this Agreement and all exhibits hereto, [the Bryants] shall dismiss or withdraw all complaints [they] ha[ve] filed with any other organization or government entity including, but not limited to the National Association for the Advance [sic] of Colored People, the United State [sic] Department of Housing and Urban Development, the North Carolina Real Estate Commission, the North Carolina Department of Environment and Natural Resources, the American Civil Liberties Union, Federal Trade Commission, or Department of Justice. [The Bryants] will provide a notarized certification to Eastwood when they have dismissed and/or withdrawn all complaints. If complaints cannot be dismissed, [the Bryants] agree not to prosecute or pursue any of the complaints.

5. <u>Enforceability.</u> The Parties agree that this Agreement sets forth all material terms of the Parties' settlement, and it may be specifically enforced by the Court.

\*\*\*\*\*

13. <u>Attorneys' Fees and Costs.</u> Except as set forth herein, each Party shall bear its own attorneys' fees, expert fees, mediator fees and all costs associated with the Lawsuits, this Agreement and all matters and documents referred to herein, the dismissal of the Lawsuits, and all other matters related to the Lawsuits and the settlement thereof. In the event of any litigation to enforce the terms of this Agreement, the

> prevailing party shall be entitled to recover its attorneys' fees and costs.

(Docket Entry 31-1 at 1-4, 8 (certain underscoring added).)

The Bryants executed the Settlement Agreement on December 28, 2023. (See id. at 11.) The following day, Eastwood executed the Settlement Agreement. (See id. at 10.)

According to an email exchange between the parties on December 28, 2023, Eastwood wired "[t]he settlement funds" to the Bryants earlier that day. (Docket Entry 31-3 at 1.) Acknowledging receipt of those funds, the Bryants stated that they "[w]ill began [sic] dismissals early next week" and "[w]ill notify [Eastwood's counsel] promptly." (Id.; see also Docket Entry 29-3 (reflecting the Bryants' dismissal of their state-court counterclaims on December 29, 2023).)

However, as reflected in an "Order Granting [Eastwood's] Motion to Enforce Settlement Agreement" that the state court issued in March 2024 (see Docket Entry 31-4), the Bryants "have failed to comply with the terms of th[e Settlement] Agreement" (id. at 2). Accordingly, the state court ordered, inter alia, that the Bryants "dismiss the federal lawsuit [they] filed against Eastwood (Case No. 1:23cv637 in the Middle District of North Carolina) within five (5) business days from the issuance of th[at] Order" and also pay Eastwood "[a]ttorneys' fees of $12,465 pursuant to Paragraph 13 of the Settlement Agreement." (Id.) The state court additionally ordered the Bryants to comply with the Preliminary Injunction

10

Order, "[p]ursuant to Paragraph 4(a) of the Settlement Agreement," and Eastwood to "file the Confession of Judgment," "[p]ursuant to Paragraph 4(b) of the Settlement Agreement." (Id. at 2-3.) On March 28, 2024, the Bryants filed a notice of appeal from the state court's order. (See Docket Entry 34-1.)

The Bryants also filed an "Opposition to [the Enforcement] Motion" (Docket Entry 33 (the "Opposition") at 1) in this Federal Lawsuit. (See Docket Entries 33-34.) According to the Opposition, the Bryants:

> oppose [Eastwood's] motions because (1) The District Court lacks subject matter jurisdiction to hear and rule upon the motion to enforce settlement agreement, (2) There is no ancillary jurisdiction to hear and rule upon the motion to enforce settlement agreement, (3) The state [c]ourt order granting [Eastwood's] motion to enforce settlement agreement is unenforceable due to [the Bryants'] filed notice of appeal which created an automatic stay. The automatic stay prohibits the enforcement of the order to enforce settlement agreement until the conclusion of the appellate process. [The Bryants'] notice of appeal was filed on March 28th, 2024, and [Eastwood's] motion to enforce the settlement agreement was filed with this Court on April 1st, 2024. In support of this opposition, [the Bryants] respectfully submit[ted] a Memorandum of Law contemporaneously filed with this opposition.
>
> Wherefore, for these reasons and the reasons stated in [the Bryants'] contemporaneously filed Memorandum of Law, [the Bryants] respectfully request[] that the Court enter an order (1) denying [Eastwood's] motion to dismiss each of [the Bryants'] claims with prejudice, (2) denying [Eastwood's] motion to enforce the settlement agreement, and (3) denying [Eastwood's] request for [the Bryants] to pay their [sic] attorneys' fees for bringing the motion.

(Docket Entry 33 at 1.) The referenced accompanying memorandum states, in full:

11

> Now comes [the Bryants] submitting this Memorandum of Law in opposition to [Eastwood's Enforcement Motion]. [The Bryants] submit forth the following exhibits in favor of denying [Eastwood's] motion to dismiss and enforce settlement agreement:
>
>> A. [The Bryants'] notice of appeal to enforce settlement agreement.
>>
>> B. North Carolina Rules of Civil Procedure Rule 62(a) (Automatic Stay Provision)

(Docket Entry 34 at 1; see also Docket Entries 34-1 to 34-2.)

In response to the Opposition, Eastwood emphasizes that it "ask[s] this Court to enforce the Settlement Agreement, not any order of a state court." (Docket Entry 35 at 1.) Per Eastwood, "[t]he Bryants therefore do not have any basis to challenge the Motion, and the Court may decide whether to enforce the settlement agreement between the parties." (Id. at 1-2.) Noting that the Court possesses inherent authority to enforce the Settlement Agreement (see id. at 2), Eastwood further asserts:

> Here, the parties reached a settlement in the instant pending case. The Bryants signed the Settlement Agreement on December 28, 2023 and Eastwood's representative signed the Settlement Agreement on December 29, 2023. Paragraphs 4(b) and 7 of the Settlement Agreement explicitly reference the instant federal lawsuit and mandate that the Bryants dismiss the lawsuit. Since the parties "reached a complete agreement" with sufficiently definite "terms and conditions[,"] the Court must enforce the "settlement agreement under its inherent equity power." The Bryants have not contended and cannot contend this agreement is invalid. This Court is thus able to enforce the clear and unambiguous terms of the valid Settlement Agreement as written.

(Id. at 2-3 (citations omitted).)

12

# DISCUSSION

"As a matter of policy, settlement benefits parties and conserves judicial resources, and is therefore favored by the [United States Court of Appeals for the] Fourth Circuit." Clayton v. Ameriquest Mortg. Co., No. 1:02cv415, 2004 WL 734978, at *2 (M.D.N.C. Apr. 5, 2004), aff'd, 117 F. App'x 301 (4th Cir. 2004); see also, e.g., Central Wesleyan Coll. v. W.R. Grace & Co., 6 F.3d 177, 185 (4th Cir. 1993) (explaining that, to benefit parties and conserve judicial resources, "[c]ourts should foster settlement"). Importantly, "when a settlement is reached in a case pending before it, a trial court has the authority to enforce the terms of that settlement." Clayton, 2004 WL 734978, at *2. Indeed, "[t]rial courts possess the inherent authority to enforce a settlement agreement and to enter judgment based on an agreement without a plenary hearing." Petty v. Timken Corp., 849 F.2d 130, 132 (4th Cir. 1988); see also Millner v. Norfolk & W. Ry. Co., 643 F.2d 1005, 1009 (4th Cir. 1981) (noting "the trial court's inherent equitable power summarily to enforce a settlement agreement when the practical effect is merely to enter a judgment by consent"). "This summary procedure has been found to be admirably suited to situations where, for example, a binding settlement bargain is conceded as shown, and the excuse for nonperformance is comparatively unsubstantial." Millner, 643 F.2d at 1009 (internal quotation marks omitted). "[H]aving second thoughts about the

13

results of a settlement agreement does not justify setting aside an otherwise valid agreement." Young v. FDIC, 103 F.3d 1180, 1195 (4th Cir. 1997); see also Petty, 849 F.2d at 133 (explaining that, "[u]nless the resulting settlement is substantially unfair, judicial economy commands that a party be held to the terms of a voluntary agreement," and that, "ha[ving] second thoughts about the level of [one's] recovery" "does not . . . establish unfairness or justify setting aside an otherwise valid agreement").

"[T]o grant a motion to enforce a settlement agreement, a district court (1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions." Smith-Phifer v. City of Charlotte, No. 23-2031, __ F.4th __, __, 2024 WL 4280970, at *7 (4th Cir. Sept. 25, 2024) (internal quotation marks omitted). Here, the record conclusively establishes that the parties entered into the Settlement Agreement in December 2023, under which, inter alia, Eastwood agreed to pay the Bryants $7,500 in return for the Bryants' agreement to (1) dismiss with prejudice the Federal Lawsuit and their State Lawsuit counterclaims, (2) withdraw any other complaints, (3) execute the Confession of Judgment for $150,000, which Eastwood agreed not to file unless the Bryants defaulted under the Settlement Agreement, and (4) permanently abide by the Preliminary Injunction Order. (See Docket Entry 31-1 at 1-11.) "Clearly, a settlement d[oes] exist." Petty, 849 F.2d at 133. Moreover, the

14

Settlement Agreement reflects the parties' complete agreement to resolve the instant Federal Lawsuit, including the terms and conditions of such resolution. (See, e.g., Docket Entry 31-1 at 4 ("The Parties agree that this Agreement sets forth all material terms of the Parties' settlement, and it may be specifically enforced by the Court.").)

Notably, in responding to the Enforcement Motion, the Bryants did not argue that they "didn't reach a complete agreement with [Eastwood to settle the Federal Lawsuit]," Smith-Phifer, __ F.4th at __, 2024 WL 4280970, at *9. (See Docket Entries 33-34.) "And it would be hard for [them] to do so — the parties' mutual assent to be bound was evinced by the [parties'] executed [Settlement Agreement] and by their performance thereunder, namely [Eastwood's] payment to [the Bryants] and [the Bryants' dismissal of their state-court counterclaims]." Smith-Phifer, __ F.4th at __, 2024 WL 4280970, at *9. Similarly, the Bryants have neither offered a reason — let alone a compelling reason — for their nonperformance nor argued that the Settlement Agreement "is substantially unfair," Petty, 849 F.2d at 133. (See Docket Entries 33-34.) Further, the Court "can see no basis for finding [the Bryants'] settlement with [Eastwood] unfair," Petty, 849 F.2d at 133: the Settlement Agreement reflects that, notwithstanding that the Bryants caused Eastwood $150,000 in damages through their actions (see Docket Entry 31-1 at 3), Eastwood agreed to pay the Bryants $7,500 in

15

return for the Bryants' dismissal of various claims and their agreement to, inter alia, refrain from (1) "[b]randishing a gun, firearm, or other weapon in connection with any act which is intended, or could reasonably be inferred, to disrupt or harm Eastwood's business" (Docket Entry 16-11 at 11), (2) "[h]arassing, threatening, or otherwise approaching Eastwood's customers and prospective customers," as well as Eastwood's "employees, vendors, [and] contractors" (id.), and (3) "[e]ngaging in any other act or practice intended to harm Eastwood's business and/or reputation" (id. at 12). (See Docket Entry 31-1 at 1-4.)

In short, "[t]here appear to be no 'extraordinary circumstances' or 'substantially unfair' provisions that would justify declining to enforce the [S]ettlement [A]greement, and [the Bryants] ha[ve] not suggested any." Okie Int'l Co. v. Old Dominion Footwear, Inc., No. 6:13-cv-12, 2014 WL 176770, at *1 (W.D. Va. Jan. 16, 2014). Accordingly, the record supports summary enforcement of the Settlement Agreement. See, e.g., United States ex rel. McDermitt, Inc. v. Centex-Simpson Constr. Co., 34 F. Supp. 2d 397, 399 (N.D. W. Va. 1999) (explaining that, "[b]ecause a settlement agreement enjoys great favor with the courts, consequently, it is only in the most *extraordinary circumstances* that such a pact will be vacated" (emphasis in original) (internal quotation marks omitted)), aff'd sub nom. United States v. Centex-Simpson Constr., 203 F.3d 824 (4th Cir. 2000); Vari-O-Matic

16

Mach. Corp. v. New York Sewing Mach. Attachment Corp., 629 F. Supp. 257, 258 (S.D.N.Y. 1986) ("A court has the inherent power, and indeed the duty, to enforce a settlement in a case pending before it.").

The Bryants maintain, though, that the Court lacks jurisdiction to adjudicate the Enforcement Motion and enforce the Settlement Agreement. (See Docket Entry 33 at 1.) This argument lacks merit. To begin:

> A party to a settlement agreement may seek to enforce the agreement's terms when the other party reneges. If, at the time of the claimed breach, the court case already has been dismissed, the aggrieved party may bring an independent action for breach of contract. If, however, the settlement collapses before the original suit is dismissed, the party who seeks to keep the settlement intact may file a motion for enforcement.

Malave v. Carney Hosp., 170 F.3d 217, 220 (1st Cir. 1999) (citation omitted). "This case falls squarely in the latter category and, as such, the question of jurisdiction is not an issue." Sadighi v. Daghighfekr, 66 F. Supp. 2d 752, 758 (D.S.C. 1999); see also id. ("The majority of circuits 'have uniformly stated that a district court possesses the inherent or equitable power summarily to enforce an agreement to settle a *case pending before it*.'" (emphasis in original)) (collecting cases).

The Bryants further contend that "[t]he state [c]ourt order granting [Eastwood's] motion to enforce settlement agreement is unenforceable due to [their] filed notice of appeal which created

17

an automatic stay." (Docket Entry 33 at 1; see also Docket Entry 34 at 1 (referencing "North Carolina Rules of Civil Procedure Rule 62(a) (Automatic Stay Provision)"); Docket Entry 34-2 (containing copy of referenced rule).) As an initial matter, the North Carolina Rules of Civil Procedure do not apply in this Court. See, e.g., Cook v. Farmers Mut. Hail Ins. Co. of Iowa, No. 1:23cv817, 2024 WL 4266707, at *2 n.4 (M.D.N.C. Sept. 23, 2024) ("The Federal Rules of Civil Procedure, not the North Carolina Rules of Civil Procedure, govern proceedings in this Court.").[4] More importantly, the Enforcement Motion seeks to enforce the Settlement Agreement, not any state court order. (See Docket Entry 30 at 1-2.) Independently of any state-court order, the Settlement Agreement requires dismissal of the Bryants' claims as part of the parties' settlement of the instant Federal Lawsuit. (See Docket Entry 31-1 at 1-4.) As such, the Bryants' arguments regarding the state-court order miss the mark. The Court will therefore enforce the Settlement Agreement, dismissing with prejudice the Bryants' claims (see id. at 4), and, in so doing, mooting the Initial Motion and the Rule 26(f) Report.

As a final matter, Eastwood seeks attorney's fees pursuant to Paragraph 13 of the Settlement Agreement. (See Docket Entry 30 at 2.) This paragraph provides that, "[i]n the event of any

---

[4] Moreover, North Carolina Rule of Civil Procedure 62(a) does not appear to provide for an automatic stay in these circumstances. (See Docket Entry 34-2 at 1.)

18

litigation to enforce the terms of this Agreement, the prevailing party shall be entitled to recover its attorneys' fees and costs." (Docket Entry 31-1 at 8.)  The Settlement Agreement obliged the Bryants to dismiss the instant Federal Lawsuit by January 5, 2024. (See id. at 3-4; see also Docket Entry 31-3 at 1 (reflecting payment on December 28, 2023).)  They failed to comply with this requirement, necessitating further litigation to enforce the Settlement Agreement.  (See Docket Entries dated Dec. 22, 2023, to present.)  Accordingly, Paragraph 13 entitles Eastwood to its attorney's fees.  (See Docket Entry 31-1 at 8.)  The Court will therefore grant Eastwood's request for attorney's fees and will establish a process to determine the amount of fees subject to recovery.  See David v. En Pointe Prods., LLC, No. 1:22cv287, 2023 WL 5867424, at *4-5 (E.D. Va. Sept. 11, 2023) (finding that settlement agreement entitled defendant to attorney's fees for litigation required to enforce agreement and directing further briefing "quantifying the fees sought and establishing the reasonableness of and the basis for those fees").

## CONCLUSION

The Bryants and Eastwood entered into a Settlement Agreement to resolve the instant Federal Lawsuit, which required the Bryants to promptly dismiss their claims with prejudice.  The Bryants failed to do so, necessitating litigation in this Court to enforce

19

the Settlement Agreement and entitling Eastwood to recover its attorney's fees for such litigation.

**IT IS THEREFORE ORDERED** that the Enforcement Motion (Docket Entry 30) is **GRANTED**. On or before October 15, 2024, Eastwood shall file a Notice setting forth its reasonable attorney's fees for the (federal) litigation necessary to enforce the Settlement Agreement. Within 14 days of such filing, the Bryants shall file any Response (of no more than 10 pages) setting forth any objection to this Notice. Eastwood may file a Reply (of no more than 10 pages) within 7 days of any such filing by the Bryants. Upon completion of this briefing or on November 12, 2024, whichever occurs earlier, the Clerk shall refer this matter back to the undersigned.

**IT IS FURTHER ORDERED** that the Initial Motion (Docket Entry 15) is **DENIED AS MOOT** and the Rule 26(f) Report (Docket Entry 28) is **TERMINATED AS MOOT**.

This 27th day of September, 2024.

                                            /s/ L. Patrick Auld
                                              **L. Patrick Auld**
                                **United States Magistrate Judge**